**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

SHAILESH P. AMIN,                )
                                 )
              Plaintiff,         )
                                 )
vs.                              )
                                 )        Case No. 06-CV-568 -GKF-SAJ
FLIGHTSAFETY INTERNATIONAL, INC.,)
                                 )
              Defendant.         )
                                 )
                                 )
                                 )

## O P I N I O N   A N D   O R D E R

This matter comes before the court on the motion for summary judgment [Doc. No. 27]

of defendant, FlightSafety International, Inc.  For the reasons set forth below, defendant's

motion is granted.

Plaintiff, Shailesh P. Amin, a former employee of defendant, was terminated from his

employment on July 21, 2005.  Plaintiff asserts three causes of action.  First, he alleges he was

terminated based on race and national origin in violation of Title VII of the Civil Rights Act of

1964.  Second, he claims the termination breached an employment contract between the parties.

Finally, he asserts a claim for negligent and/or intentional infliction of emotional distress.

Defendant has moved for summary judgment arguing, (1) defendant terminated plaintiff

for a legitimate, nondiscriminatory reason.; and (2) plaintiff's employment with defendant was

at-will, and no employment contract existed.[1]

---

[1]Defendant has not moved for summary judgment on plaintiff's third cause of action for
negligent/intentional infliction of emotional distress.

## Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  When applying this standard, a court must examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. *Wolf v. Prudential Insurance Co. of America*, 50 F.3d 793, 796 (10th Cir. 1995).  The movant for summary judgment must meet the initial burden of showing the absence of a genuine issue of material fact, then the nonmovant bears the burden of pointing to specific facts in the record "showing a genuine issue for trial as to those dispositive matters for which it carries the burden of proof." *Id.*

## Undisputed Facts

Plaintiff went to work for defendant at its Broken Arrow, Oklahoma, facility in November of 1984, after completing a Masters degree in Aerospace Engineering at University of Kansas. [Doc. No. 28, Defendant's Statement of Undisputed Fact Nos. 1,2; Doc. No. 43, Plaintiff's Response to Defendant's Motion for Summary Judgment, Disputed Material Facts]. Defendant's Broken Arrow facility manufactures flight simulators.  Defendant maintains simulator centers in the United States and abroad where individuals may obtain simulator training.  [Doc. No. 28, Statement No. 3; Doc. No. 43, Disputed Material Facts].  From February 1998 until the time of his termination, plaintiff was a field service engineer.  In that job, he provided support for designated simulator centers.  [Doc. No. 28, Statement No. 4; Doc. No. 43, Disputed Material Facts].

Defendant publishes an employee handbook, which is distributed to all employees, and which plaintiff received. [Doc. No. 28, Statement No. 6; Doc. No. 43, Disputed Material Facts.]

Concerning work hours, the employee handbook provides:

> The office is open from 8:00 a.m. to 5:00 p.m, Mondays through Fridays. FSI-SSD's preference is for office employees to work within this schedule.  However, it is understood that some department hours are adjusted to fit the coordination of work with that of the manufacturing departments.  It is also understood, that exempt employees may be required to work extra hours to accommodate certain deadlines.  If such extended hours are required, FSI-SSD will allow some flexibility with the expectation that employees will make every effort to align their hours with office hours.  This is in order to facilitate consistent and reliable availability for meetings and other interactions, which are essential to the smooth operation of this business.

[Doc. No. 28, Statement No. 7, citing Ex. 4 to plaintiff's deposition, policy 2.5; Doc. No. 43, Disputed Material Facts].[2]  Concerning time keeping, the handbook provides:

> All employees are required to complete a timesheet.  Employees are encouraged to complete timesheets on a daily basis in order to ensure accuracy.  Falsification of timesheet records is cause for disciplinary action up to and including discharge.

[Doc. No. 28, Statement No. 9, citing Ex. 4 to plaintiff's deposition, policy 2.7; Doc. No. 43, Disputed Material Facts]. Concerning discipline, the handbook provides:

> FSI-SSD's policy is to attempt to deal constructively with employee performance problems and employee errors.  The disciplinary process will be determined by FSI-SSD in light of the facts and circumstances of each case.  Each situation will be considered in light of a variety of factors including, but not limited to, the seriousness of the situation, the employee's past conduct and length of service, and the nature of the employee's previous performance or incidents involving the employee.

---

[2]Plaintiff does not dispute the contents of Employee Handbook but contends the actual practice was different and allowed flexibility. [Doc. No. 43, Disputed Material Fact No. 1].

3

[*Id.,* Ex. 4, policy 5.2].   The handbook provides, concerning corrective action:

> Corrective Action is taken against an employee in response to a rule infraction or a violation of company policies.
>
> In order to ensure the maximum degree of consistency in applying disciplinary action, all such actions shall be coordinated through the Human Resource Department prior to administering.  Penalties need not be progressive in nature.
>
> FSI-SSD considers some violations as grounds for immediate dismissal, including, but not limited to: insubordinate behavior, theft, destruction of company property, breach of Employment, Confidential Information and Invention Assignment Agreement, untruthfulness about personal background, drug or alcohol abuse, or threats or use of violence.

[*Id.*, Ex. 4, policy 5.3; Doc. No. 43, Disputed Material Fact No. 2].

The Employee Handbook also provides:

> This handbook does not alter the "at will" relationship between employer and employee and does not guarantee employment for any definite period of time.  It is not a contract, express or implied.
>
> *    *    *
>
> FSI-SSD does not offer tenured or guaranteed employment.  Unless FSI-SSD has otherwise expressly agreed in writing, your employment is "at will" and may be terminated by you or by FSI-SSD at any time, including after the evaluation period.

[Doc. No. 28, Statement No. 10, citing Ex. 4 to plaintiff's deposition, "About this Handbook,"

and policy 1.1; Doc. No. 43, Disputed Material Fact No. 2].

Further, plaintiff executed receipts in 2004 and 2005, acknowledging receipt of certain

company documents.  Those receipts contained the following language:

> Access to these guidelines, manuals, and documents does not constitute an express or implied contract of employment or an assurance of continued employment or employment other than at will.

[Doc. No. 28, Statement No. 11, citing Exs. 5 and 6 to plaintiff's deposition; Doc. No. 43,

4

Disputed Material Fact No. 2].

In July of 2004, Bob Lawrence, group leader in electrical engineering, reported to Robn Werner, defendant's human resources manager, that Mark Rodrigues, an employee under his supervision, had told him that on a trip to Paris, France, plaintiff did not perform the work he reported that he had performed; that the problem with plaintiff had been going on for several years; that he was putting down hours on his time sheet when he was not at the centers; and that someone need to do something about it. [Doc. No. 28, Statement Nos. 12, 14; Doc. No. 43, Disputed Material Fact Nos. 3, 4].[3]  After investigating Lawrence's allegations, Werner met with Derek Maeer, Vice President of Simulation at defendant's Broken Arrow facility, who told her he wanted Bill Fore, who had taken over as supervisor in plaintiff's work area on October 18, 2004, to look into the matter. [Doc. No. 28, Statement Nos. 16-19; Doc. No. 43, Disputed Material Fact Nos. 3-5].  In January of 2005, Fore, who had become suspicious of the time plaintiff wrote on his time sheets, began observing the times plaintiff reported to and left work and recording his observations on an Excel spreadsheet.  [Doc. No. 28, Statement Nos. 20-21; Doc. No. 43, Disputed Material Fact No. 6].  Fore recorded numerous incidents where the total hours plaintiff recorded on his time sheet exceeded his total time at the Broken Arrow facility, as noted by Fore. [Doc. No. 28, Statement No. 22; Doc. No. 43, Disputed Material Fact Nos. 6, 7].

On March 28, 2005, plaintiff sent an e-mail to Fore asking that a meeting set for 8:30 a.m. be rescheduled until 10 a.m. or later, stating, "You and Ron Carter know that while I am in

_____

[3]Plaintiff contends, "Shortly after writing this accusation against Amin, Mr. Lawrence wrote the following in reference to whether Amin was subject to the same employment laws: 'Or is that just for us middle-class, middle aged white guys?'"  This statement was actually made in an e-mail dated April 2006–nine months after plaintiff's discharge. [Doc. No. 43, Disputed Material Fact No. 3, citing Ex. 14 (Doc. 43-8)]

Tulsa, I do not work my full 8 hours and come in at 10 a.m." [Doc. No. 28, Statement No. 23, citing Ex. 1 to Fore deposition; Doc. No. 43, Disputed Material Fact Nos. 6-7].  In response, Carter, who was Fore's supervisor, wrote: "Please revise your schedule to be here at 0800 and plan to work 8 hours per day.  The Pre-Flight meetings will continue to be held at 0830 each morning." [*Id.*].  Plaintiff testified that he understood that Carter had instructed him to come to work by 8:00 a.m. and to work eight hours a day. [Doc. No. 28, Statement No. 24, citing plaintiff's deposition, pp. 102-106 and Ex. 10 thereto; Doc. No. 43, Disputed Material Fact No. 7.]  After Carter's e-mail to plaintiff, Fore documented 14 instances in which plaintiff did not work an eight-hour day. [Doc. No. 28, Statement No. 25, citing plaintiff's deposition, pp.112-113 and Ex. 3 C to Fore's deposition; Doc. No. 43, Disputed Material Fact No. 7].  Before the e-mail from Carter, Fore had talked with plaintiff about normal work hours and believed plaintiff understood and agreed to that. [Doc. No. 28, Statement No. 26, citing Fore's deposition, pp. 43-44 and 72-73; Doc. No. 43, Disputed Material Facts].

In July 2005, Fore met with Werner about plaintiff's attendance. [Doc. No. 28, Statement Nos. 27-28; Doc. No. 43, Disputed Material Fact No. 8].  Within a day or two of the meeting between Fore and Werner, the two met with plaintiff to review Fore's notes and plaintiff's time sheets.  Plaintiff was shown and reviewed Fore's notes. [Doc. No. 28, Statement No. 29; Doc. No. 43, Disputed Material Fact. No. 8].  Werner also raised with plaintiff statements by other employees that when plaintiff was visiting simulator centers, he was seldom at the site, but his time sheets showed 10-12 hours of work.  [Doc. No. 28, Statement No. 32; Doc. No. 43, Disputed Material Facts].  Plaintiff told her technician Dwight Pitts could verify that he worked long hours in the field, so Werner checked with Pitts the same day.  Pitts said when he was

6

working with plaintiff, he was only with him 2-3 hours a day and plaintiff could have been

working elsewhere during the remainder of the day. [Doc. No. 28, Statement Nos. 33-34; Doc.

No. 43, Disputed Material Facts].  Thereafter, in a meeting among Werner, Fore, Carter and

Maeer, Werner recommended that plaintiff be fired and Carter and Maeer agreed. [Doc. No. 28,

Statement Nos. 36-37; Doc. No. 43, Disputed Material Facts].  Werner reviewed the decision

with corporate human resources representative Tom Rife, who concurred. [Doc. No. 28,

Statement No. 40, Doc. No. 43, Disputed Material Facts].  .

Plaintiff was terminated July 21, 2005. [Doc. No. 28, Statement No. 44; Doc. No. 2,

Complaint, ¶4].[4]  Defendant terminated plaintiff for falsifying time sheets and insubordinately

refusing to report to work as directed. [Doc. No. 28, Statement No. 45, citing Defendant's

Response to Plaintiff's Interrogatories and Requests for Production, Interrogatory 9; Doc. No.

43, Disputed Material Facts].[5]

---

[4]Werner testified that she told plaintiff in the discharge meeting why he was being fired; plaintiff testified he was not given a reason for the termination. [Doc. No. 28, Statement Nos. 41-42, citing Werner deposition at pp. 116-118, and plaintiff's deposition at pp. 142-153.]

[5]Plaintiff contends "The employer was motivated to fire Amin because of discrimination against him because of his country of birth." [Doc. No. 43, Disputed Material Fact No. 9]. However, the only evidence plaintiff submits in support of this statement is plaintiff's affidavit, which contains the statement, "I was discriminated against because of my country of birth," and a time sheet of plaintiff. [*Id.,* Ex. 1, Ex 13] . Plaintiff also contends, in his argument, that "harsh and discriminatory statements" allegedly made by Fore show discriminatory intent . [Doc. No. 43, p. 10]. Specifically, plaintiff testified that when Fore gave him his 20-year anniversary pin, he asked him were he was from.  Plaintiff told him he was born in India, but his parents moved to Kenya.  Plaintiff said Fore responded, "Oh, I wouldn't like to be from those countries." [Doc. No. 28, citing plaintiff's deposition, p. 71].  Plaintiff also testified that he complained to Fore about calls made to him by another engineer when plaintiff had to go to Miami during Thanksgiving to work on the Boeing simulator. [Doc. No. 28, plaintiff's deposition, pp.71-72]. At the conclusion of the conversation, plaintiff said he told Fore, "The next time I'm not going to go during holidays, I'm not going to travel."  He testified Fore responded, "You don't have any rights...like those." [*Id.,* pp. 72-73].  Plaintiff also testified that he was supposed to work on an

7

## Analysis

### 1.  Plaintiff's Title VII Claim

The burden-shifting framework pronounced in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802-04 (1973), guides analysis of plaintiff's Title VII national origin discrimination claim.  *Rivera v. City and County of Denver,* 108 F.3d  912, 920 (10th Cir. 2004).  Under this framework, plaintiff must initially establish a prima facie case of discrimination.  *Id.*  If the plaintiff establishes a prima facie case, the burden shifts to the employer "to articulate some legitimate, nondiscriminatory reason" for its action.  *Id.,* citing *McDonnell Douglas* at 802.  If the defendant comes forward with a nondiscriminatory reason for its actions, then the burden reverts to the plaintiff to show that "there is a genuine dispute of material fact as to whether the employer's proffered reason for the challenged action is pretextual–i.e., unworthy of belief." *Morgan v. Hilti, Inc.,* 108 F.3d 1319, 1323 (10th Cir. 1997).

To establish a prima facie case of discriminatory discharge based on national origin, plaintiff must show that (1) he belongs to a protected class; (2) he was qualified for his job; (3) despite his qualifications, he was discharged; (4) his job was not eliminated after his discharge. *Rivera,* 365 F.3d at 920.

Here, the evidence shows plaintiff,  an Indian-born American citizen, is an aeronautical engineer who had worked for defendant for more than 20 years and since 1998 had been a field service engineer.   He was terminated from his job and there has been no evidence the job was

---

upgrade in Toronto, but was told another person was going to work on the upgrade.  He told Fore he was supposed to be working on the upgrade, and Fore said, "'No,' he was joking, he said, 'I don't want you people working on this...' and then I responded, 'What do you mean?' And he said, 'Well, I want you to work on other stuff.'" [*Id.,* pp. 73-74].  Finally, he complained that Fore would stand outside his (plaintiff's) office and talk to an Indian technician. [*Id.,* p. 74].

8

eliminated after his discharge. Thus, plaintiff has met his burden of establishing a prima facie case.

Defendant, however, asserts plaintiff was terminated for falsifying time sheets and for insubordination. Defendant has presented evidence that plaintiff falsified time sheets and that on 14 occasion before his termination he failed, after a March 28, 2005 e-mail from Ron Carter directing him to "be here at 0800 and plan to work 8 hours per day," to work an eight-hour day. Defendant's employee manual explicitly states that falsification of time sheets is grounds for discipline, up to and including discharge. The manual also states that certain conduct, including insubordination, is grounds for immediate discharge.

The defendant's burden in the *McDonnell Douglas* burden-shifting context is one of production, not persuasion; it can involve no credibility assessment. *Doubele v. Spring/United Management Company,* 342 F.3d 1117, 1135 (10th Cir. 2003). The Tenth Circuit has described the defendant's burden at this stage of the proceedings as "exceedingly light." *Zamora v. Elite Logistics, Inc.,* 478 F.3d 1160, 1165 (10th Cir. 2007).

Defendant has clearly met the burden to show plaintiff was discharged for a legitimate, non-discriminatory reason. Thus, the burden shifts back to plaintiff to show the reason was pretextual. Pretext can be shown by "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reason." *Morgan,* 108 F.3d at 1323. Where a plaintiff does not dispute the employer's articulated nondiscriminatory reason for dismissal, the employee has failed to prove pretext as a matter of law. *Richmond v. ONEOK,*

9

*Inc.,* 120 F.3d 205, 209 (10th Cir. 1997).

Plaintiff's statement, in his affidavit, that, "I was discriminated against because of my country of birth," without more, does not constitute evidence of discrimination.  Mere conjecture that an employer's explanation is a pretext for intentional discrimination is an insufficient basis for denial of summary judgment.  *Branson v. Price River Coal Co.,* 853 F.2d 768, 772 (10th Cir. 1988).   Nor does the time sheet submitted by plaintiff as exhibit 13 to his brief support his claim of discrimination.  Additionally, Plaintiff has offered no evidence of disparate treatment of similarly situated employees.  *See Panis v. Mission Hills Bank, N.A.,* 60 F.3d 1486, 1491 (10th Cir. 1995).

Plaintiff asserts that "the discriminatory animus by employee Lawrence, the sham, and the indifferent role of Fore in the shown 'investigation' by falsely asserting that the spreadsheet he prepared was valid to show that time [*sic*] Amin was guilty of fraud must all be considered together."  [Doc. No. 43, p. 11].  Plaintiff contends that Lawrence, the employee who complained to HR manager Werner that plaintiff was falsifying time on field projects, launched a "witch hunt" against plaintiff that culminated in his termination. [*Id.,* p. 5].   Plaintiff argues discriminatory animus is demonstrated by a comment Lawrence made on his own self-evaluation form, in which he stated "ILS seriously dropped the ball on a set of ERJ upgrades in Paris, and in related news M. Amin should be fired, and in my world, prosecuted for fraud." [Doc. 43, p. 4, citing Ex 3. Lawrence deposition at p. 44, and Ex. 4].  This statement, on its face, evidences no discriminatory animus, but is rather a statement of opinion that plaintiff falsified time sheets on a project in Paris.  Plaintiff has also submitted an e-mail statement made by Lawrence to Werner in reference to whether Amin was subject to the same employment laws, in which Lawrence

10

wrote,  "Or is that just for us middle-class, middle aged white guys?"   Lawrence, however, was not involved in the decision to terminate plaintiff, and the e-mail communication occurred in April 2006–almost a year after plaintiff was discharged.  Thus, the e-mail is insufficient to show discriminatory motive.

Plaintiff also contends Bill Fore, his supervisor, made "harsh and discriminatory statements" to him. [Doc. No. 43, p. 10].  The court has reviewed the statements and conduct, as set forth in note 5, and is hard-pressed to conclude they demonstrate discriminatory animus of any kind.

Finally, plaintiff challenges the reliability of Fore's spreadsheet reflecting his observations of plaintiff's arrivals and departures from work, arguing it is flawed and cannot prove that plaintiff falsified his time sheets.   [Doc. 43, pp. 9-10].   Plaintiff misapprehends the nature of defendant's burden in the *McDonnell Douglas* analysis.  Defendant, to carry its burden of production, need only articulate through some proof a facially nondiscriminatory reason for the termination.  "[T]he defendant does not at this stage of the proceedings need to litigate the merits of the reasoning, nor does it need to prove that the reason relied on was bona fide."  *Panis v. Mission Hills Bank, N.A.,* 60 F.3d at1491, citing *E.E.O.C. v. Flasher CO., Inc.,* 986 F.2d 1312, 1216 (10th Cir. 1992).  The relevant inquiry is whether the employer's stated reasons were held in good faith at the time of the discharge, even if they later prove to be untrue, or whether plaintiff can show that the employer's explanation was so weak, implausible, inconsistent or incoherent that a reasonable fact finder could conclude that it was not an honestly held belief but rather was subterfuge for discrimination.  *Young v. Dillon Companies, Inc.,* 468 F. 3d 1243, 1250 (10th Cir. 2006).   The court's role "is to prevent intentional discriminatory...practices, not to act

11

as a 'super personnel department.'" *Id.*

Plaintiff has failed to demonstrate a genuine dispute of material fact as to whether the employer's proffered reason for discharging him was pretextual, i.e., unworthy of belief. *Morgan,* 108 F.3d at 1323.  Therefore, defendant is entitled to summary judgment on plaintiff's national origin discrimination claim.

### Breach of Implied Contract

Plaintiff has also claimed defendant's employee manual constituted an implied contract with plaintiff, and defendant breached the contract by failing to comply with policy 5.2 regarding discipline.   Defendant argues the manual created no implied contract.

Oklahoma is an at-will employment state.  Under the at-will rule, "an employer may discharge an employee for good cause, for no cause or even for cause morally wrong, without being guilty of legal wrong."  *Burk v. K-Mart Corp.,* 770 P.2d 24, 26.  In Oklahoma an employment contract of indefinite duration may be terminated without cause at any time without incurring liability for breach of contract.  *Id.*

In certain circumstances, Oklahoma courts have found from particular facts that parties had intended a contract of permanent employment or of tenured job security.  *Hinson v. Cameron,* 742 P.2d 549, 554 (Okla. 1987).  Factors to consider when determining whether a right to job security exists are: (1) evidence of some "separate consideration" beyond the employee's services to support the implied term, (b) longevity of employment, (c)  employer handbooks and policy manuals, (d) detrimental reliance on oral assurances, pre-employment interviews, company policy and past practices and (e) promotions and commendations.   *Id.* at 554-55.

Here, plaintiff was a long time employee and defendant had an employee handbook. However, plaintiff has introduced no evidence of separate consideration supporting an implied term of job security and no evidence of detrimental reliance. The handbook expressly states that the handbook does not alter the "at will" relationship between the parties, does not guarantee employment for any definite period of time and is not a contract, express or implied. [Employee Manual, "About this Handbook"]. Further, the handbook states that defendant "does not offer tenured or guaranteed employment" and that, unless otherwise expressly agreed in writing, employment is "at will" and may be terminated by either party "at any time, including after the evaluation period." [Employee Handbook, policy 1.1]      Moreover, the manual provides that falsification of time sheets is grounds for disciplinary action, including discharge [Employee Handbook, policy 2.7] and that certain violations, including subordination, are grounds for immediate dismissal. [Employee Handbook, policy 5.3]. The evidence clearly establishes, too, that plaintiff failed to comply with a written directive from Ron Carter to come to work at 8 a.m. and put in a full eight hours each day–an act of insubordination.

Plaintiff has failed to show either that the employee manual constituted an implied contract of job security or that his termination violated the policies set forth in the handbook. Therefore, defendant is entitled to summary judgment on plaintiff's breach of contract claim.

## Conclusion

For the reasons set forth above, defendant's motion for summary judgment [Doc. No. 27] is sustained and plaintiff's claims for Title VII national origin discrimination and breach of contract are dismissed. The case remains pending on plaintiff's Third Cause of Action, which the motion for summary judgment did not address.

13

ENTERED this 23rd day of January, 2008.


Gregory K. Frizzell
United States District Judge
Northern District of Oklahoma