IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| SHAILESH P. AMIN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | Case No. 06-CV-568 -GKF-PJC |
| FLIGHTSAFETY INTERNATIONAL, INC., ) | |
| ) | |
| Defendant. ) | |

**O P I N I O N  A N D  O R D E R**

This matter comes before the court on defendant FlightSafety International, Inc.'s Motion for Summary Judgment [Doc. No. 57]. For the reasons set forth below, defendant's motion is granted.

This employment discrimination lawsuit arises from defendant's discharge of plaintiff Shailesh P. Amin, on July 21, 2005. Plaintiff's Complaint asserted three causes of action: violation of Title VII of the Civil Rights Act of 1964, breach of employment contract, and negligent and/or intentional infliction of emotional distress. On January 23, 2009, the court granted defendant's Motion for Summary Judgment on the first two claims. [Doc. No. 47]. On August 31, 2009, the court denied defendant's Motion to Dismiss the emotional distress claim, but granted defendant's alternative motion to file a motion for summary judgment on the claim. [Doc. No. 56].[1]   Defendant then filed its Motion for Summary Judgment on plaintiff's

---

[1] In so ruling, the court observed plaintiff had pled both negligent infliction of emotional distress and intentional infliction of emotional distress. The court noted that Oklahoma does not recognize negligent infliction of emotional distress as an independent tort but rather views such a claim as a negligence claim. [Doc. No 56, p. 2].   Therefore, the court dismissed the claim insofar as it was pled as one for negligent infliction of emotional distress, and stated that the claim would be construed as one for negligence. [*Id.*]

negligence and intentional infliction of emotional distress claims [Doc. No. 57].

## I. Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). When applying this standard, a court must examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. *Wolf v. Prudential Insurance Co. of America*, 50 F.3d 793, 796 (10th Cir. 1995). The movant for summary judgment must meet the initial burden of showing the absence of a genuine issue of material fact, then the nonmovant bears the burden of pointing to specific facts in the record "showing a genuine issue for trial as to those dispositive matters for which it carries the burden of proof." *Id*.

## II. Undisputed Facts[2]

1. Plaintiff was employed by defendant for more than 21 years, serving most recently as a field service engineer from February 1998 until his termination July 21, 2005. [Doc. No. 57, Defendant's Undisputed Material Facts, ¶1; Doc. No. 60, Plaintiff's Response to Defendant's Motion for Summary Judgment, Ex. 1, Affidavit of Shailesh Amin, ¶5].

2. Plaintiff was an "at will" employee and had no express or implied employment contract. [*Id.,* ¶2; Doc. No. 47, Opinion and Order, p. 12].

---

[2]Plaintiff 's brief fails to respond directly to defendant's Undisputed Material Facts, but attaches and refers to plaintiff's affidavit [Doc. No. 60, Ex. 1] and various depositions [*Id.,* Exs. 2-5]. Based on this, the court has attempted to discern whether and to what extent plaintiff disputes defendant's Undisputed Material Facts.

3.  In the "Undisputed Facts" section of the court's order of January 23, 2009, the court stated:

In July of 2004, Bob Lawrence, group leader in electrical engineering, reported to Robn Werner, defendant's human resources manager, that Mark Rodrigues, an employee under his supervision, had told him that on a trip to Paris, France, plaintiff did not perform the work he reported that he had performed; that the problem with plaintiff had been going on for several years; that he was putting down hours on his time sheet when he was not at the centers; and that someone needed to do something about it.  After investigating Lawrence's allegations, Werner met with Derek Maeer, Vice President of Simulation at defendant's Broken Arrow facility, who told her he wanted Bill Fore, who had taken over as supervisor in plaintiff's work area on October 18, 2004, to look into the matter.  In January of 2005, Fore, who had become suspicious of the time plaintiff wrote on his time sheets, began observing the times plaintiff reported to and left work and recording his observations on an Excel spreadsheet.  Fore recorded numerous incidents where the total hours plaintiff recorded on his time sheet exceeded his total time at the Broken Arrow facility, as noted by Fore.

On March 28, 2005, plaintiff sent an e-mail to Fore asking that a meeting set for 8:30 a.m. be rescheduled until 10 a.m. or later, stating, "You and Ron Carter know that while I am in Tulsa, I do not work my full 8 hours and come in at 10 a.m."  In response, Carter, who was Fore's supervisor, wrote: "Please revise your schedule to be here at 0800 and plan to work 8 hours per day.  The Pre-Flight meetings will continue to be held at 0830 each morning."  Plaintiff testified that he understood that Carter had instructed him to come to work by 8:00 a.m. and to work eight hours a day.  After Carter's e-mail to plaintiff, Fore documented 14 instances in which plaintiff did not work an eight-hour day.  Before the e-mail from Carter, Fore had talked with plaintiff about normal work hours and believed plaintiff understood and agreed to that.

In July 2005, Fore met with Werner about plaintiff's attendance.  Within a day or two of the meeting between Fore and Werner, the two met with plaintiff to to review Fore's notes and plaintiff's time sheets.  Plaintiff was shown and reviewed Fore's notes.  Werner also raised with plaintiff statements by other employees that when plaintiff was visiting simulator centers, he was seldom at the site, but his time sheets showed 10-12 hours of work.  Plaintiff told her technician Dwight Pitts could verify that he worked long hours in the field, so Werner checked with Pitts the same day.  Pitts said when he was working with plaintiff, he was only with him 2-3 hours a day and plaintiff could have been working elsewhere during the remainder of the day.  Thereafter, in a meeting among Werner, Fore, Carter and Maeer, Werner recommended that plaintiff be fired and Carter and Maeer agreed.  Werner reviewed the decision with corporate human resources representative Tom

3

>   Rife, who concurred.
>
>   Plaintiff was terminated July 21, 2005. Defendant terminated plaintiff for falsifying time sheets and insubordinately refusing to report to work as directed.

[Doc. No. 47, Opinion and Order, pp. 5-7 (citations to record omitted)].

4. In granting defendant's previous Motion for Summary Judgment,[3] the court found defendant, pursuant to the burden-shifting framework pronounced in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802-04 (1973), had met its burden of showing plaintiff was discharged for a legitimate, non-discriminatory reason. [*Id.,* p. 9], that alleged discriminatory statements by plaintiff's supervisor and others did not demonstrate discriminatory animus [*Id.,* p. 11],[4] and plaintiff had failed to demonstrate a genuine dispute of material fact as to whether the employer's proffered reason for discharging him was pretextual [*Id.,* p. 12].

5. Plaintiff testified that his IIED claim is founded solely on the alleged wrongful termination of his employment. [Doc. No. 57, Defendant's Undisputed Material Facts, ¶28, App. 1, Shailesh Amin Dep., p. 184, ll. 10-16, p. 185, ll.9-12]. He testified, "I've been there 21 years

---

[3]The court has granted defendant leave to file a second motion for summary judgment, as defendant reasonably believed that plaintiff had withdrawn his claim for negligent/intentional infliction of emotional distress, and therefore defendant did not seek summary judgment on that claim in its previous motion.

[4]Plaintiff testified that when Fore gave him his 20-year anniversary pin, he asked where he was from. Plaintiff told him he was born in India, but his parents moved to Kenya. Plaintiff said Fore responded, "Oh, I wouldn't like to be from those countries." Plaintiff also testified that when he complained about being required to travel and work over Thanksgiving and told Fore he would not do so any more, Fore stated, "You don't have any rights...like those." Plaintiff also testified that he was supposed to work on an upgrade in Toronto but another person was assigned to the job. When he complained, Fore said, "No, I don't want you people working on this," and when plaintiff asked Fore what he meant, Fore responded, "Well, I want you to work on other stuff." Finally, plaintiff complained that Fore would stand outside plaintiff's office and talk to an Indian technician. [*Id.,* n. 5, pp. 7-8.]

as a good employee and they come and just say, "You're fired." [*Id.,* Amin Dep. P. 184, ll. 20-22].

## II.  Analysis

### A.  Intentional Infliction of Emotional Distress

Oklahoma first adopted the tort of intentional infliction of emotional distress in *Breeden v. League of Services Corp.,* 757 P.2d 1374 (Okla. 1978).  The tort requires evidence of extreme and outrageous conduct coupled with severe emotional distress.  *Gaylord Entertainment Co. v. Thompson,* 958 P.2d 128, 149 (Okla. 1998).  To recover damages for intentional infliction of emotional distress, a plaintiff must prove: (1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's conduct caused the plaintiff emotional distress; and (4) the resulting emotional distress was severe.  *Computer Publications, Inc. v. Welton,* 49 P.3d 732, 735 (Okla. 2002); *Daemi v. Church's Fried Chicken, Inc.,* 931 F.2d 1379, 1387 (10th Cir. 1991).

The trial court acts as a gatekeeper regarding the outrageousness of the defendant's conduct and the severity of the plaintiff's distress.  *Id.*  The trial court's gatekeeper role with regard to the second and fourth elements of the tort of IIED ensures that only valid claims reach the jury under the appropriate legal standards.  *Id.*

Regarding the "extreme and outrageous conduct" element, the Oklahoma Supreme Court has commented:

> Liability for the tort of outrage does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.  The rough edges of our society are still in need of a good deal of filing down, and in the meantime plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language and to occasional acts that are definitely inconsiderate and unkind....
> The outrageous and extreme nature of the conduct to be examined should not be

5

>considered in a sterile setting, detached from the milieu in which it took place....
>Conduct which, though unreasonable, is neither beyond all possible bounds of
>decency in the setting in which it occurred, nor is one that can be regarded as
>utterly intolerable in a civilized community falls short of having actionable quality.
>Hurt feelings do not make a cause of action under the tort-of-outrage rubric.

*Eddy v. Brown,* 715 P.2d 74, 77 (Okla. 1986). (Citations and quotations omitted). In general, a plaintiff must prove that the recitation of defendant's conduct to an average member of the community would arouse the listener's resentment against the defendant and would lead the listener to exclaim, "Outrageous!" *Computer Publications, Inc.,* 49 P.3d at 735.

"Clearly, not every discrimination claim, whether it is based on age, race, national origin, or gender, automatically supports a claim for intentional infliction of emotional distress." *Marshall v. Nelson Electric,* 766 F.Supp.1018, 1028 (N.D. Okla. 1991) citing *Grandchamp v. United Air Lines, Inc.,* 854 F.2d 381, 384-85 (10th Cir. 1988). In order to prevail on an IIED claim based on alleged discrimination, plaintiff must show extreme and outrageous conduct on the part of the employer. *Kannady v. City of Kiowa,* 2006 WL 3452552 *7 (E.D. Okla. November 29, 2006), citing *Grandchamp.*

Plaintiff's evidence does not meet this standard. Inasmuch as the court has already entered summary judgment against plaintiff on both his Title VII claim and his claim for breach of implied contract, the termination itself cannot serve as the basis for an IIED claim. *See Kannady, supra.* Moreover, the alleged discriminatory statements do not rise to the level of extreme and outrageous conduct. At most, they might be characterized as insensitive or unkind. They do not, however, lead one to exclaim, "Outrageous!" Plaintiff's evidence fails to raise a material issue of fact as to whether the alleged conduct was extreme and outrageous.

## B. Negligence

To the extent plaintiff asserts a claim for negligent infliction of emotional distress (i.e., negligence), plaintiff must prove "a duty on the part of the defendant to protect the plaintiff from injury; a failure of the defendant to perform that duty; and injury to plaintiff resulting from the failure." *Kraszewski v. Baptist Medical Center of OK, Inc.,* 916 P.2d 241, 244 (Okla. 1996). The court previously ruled that defendant's discharge of plaintiff did not constitute discrimination. Therefore, to the extent the defendant had a duty not to discriminate against plaintiff, that duty was not breached. Similarly, the court ruled no express or implied contract existed between the parties; thus, defendant had no contractual duty to retain plaintiff. Plaintiff has identified no other duty owed by defendant to plaintiff.[5]

---

[5]Plaintiff cites *Wilson v. Muckala,* 303 F.3d 1207 (10th Cir. 2002), for the proposition that conduct giving rise to his Title VII and breach of contract claims may serve as the basis for his negligence claim notwithstanding the adverse disposition of those claims. In *Wilson,* the defendant hospital raised the issue of whether it owed a common law duty to protect its employees from sexual harassment, but the Tenth Circuit declined to address the issue. Instead, the court addressed three other arguments made in support of reversal of a jury verdict for plaintiff on her claim of negligent infliction of emotional distress: First, the defendant hospital had asserted that Oklahoma does not recognize a cause of action for negligent infliction of emotional distress. Citing *Kraszewksi,* the Tenth Circuit disagreed, stating, "Oklahoma courts say that negligent infliction of emotional distress is not an independent tort, but is in effect the tort of negligence." 303 F.3d at 1213. The court stated, "A plaintiff therefore cannot proceed on a negligent infliction of emotional distress theory of liability separate from negligence, and the traditional elements of duty, breach of duty, causation, and damages apply." *Id.* Second, the hospital contended a lack of evidence of physical injury provided a basis for reversal. The court, disagreed, citing testimony of plaintiff's treating physician, who described plaintiff as suffering from various symptoms, including depression, difficulty sleeping and weight gain. *Id.* Finally, the hospital challenged the trial court's jury instruction on the elements of the claim because the instruction did not include a requirement for a showing of physical damages. *Id.* at 1214. The court agreed with the hospital and found the instruction constituted reversible error. *Id.* The court then stated, *"We need not reach the Hospital's contention that, as a matter of law, the hospital had no common law duty to protect their employee, Ms. Wilson, from sexual harassment by Dr. Muckala." Id.* (emphasis added).

7

Defendant further contends plaintiff's claim for negligence is barred by the exclusivity provision of the Oklahoma Workers' Compensation Act, 85 O.S. §12. In Oklahoma, damages for mental anguish are recoverable only if they are "produced by, connected with or the result of physical suffering or injury to the person enduring the mental anguish." *Wilson v. Muckala,* 303 F.3d 1207, 1213 (10th Cir. 2002), citing *Ellington v. Coca Cola Bottling Co. Of Tulsa,* 717 P.2d 109 (Okla. 1986).

Plaintiff has alleged he suffered emotional distress and stomach or digestive problems as a result of his termination. [Doc. No. 2, Complaint, ¶12]. However, the Oklahoma Workers' Compensation Act provides the exclusive remedy for an accidental physical injury sustained by the employee arising out of or in the course of employment. 85 O.S. §12. "An injury is received in the course of employment if it occurs within the period of employment at a place where the workman reasonably may be and while he is reasonably fulfilling a duty of his employment of engaged in doing something incidental thereto." *K-Mart Corp. v. Herring,* 188 P.3d 140, 145 (Okla. 2008). Here, plaintiff's discharge occurred while he was at work. Notification of his discharge is clearly an activity within the scope of his employment. *See Gephart v. Delmed,* 982 F.2d 428 (10th Cir. 1992) (unpublished opinion affirming dismissal by the District Court of Utah of plaintiff's claim for negligent infliction of emotional distress on the grounds that the Utah Worker's Compensation Act provided the exclusive remedy for the alleged injury).

Further, "[a]n injury arises out of the employment when there is a causal connection between the condition under which the work is to be performed and the resulting injury." *K-Mart Corp.,* 188 P.3d at 146. In this case there is quite plainly a connection between plaintiff's termination and the alleged physical injury–stomach discomfort.

8

Therefore, as a separate and alternative ground for summary adjudication, the court concludes plaintiff's negligence claim for physical injuries is barred by the exclusivity provision of the Oklahoma Workers' Compensation Act.

### III. Conclusion

For the foregoing reasons, defendant's Motion for Summary Judgment [Doc. No. 57] is granted.

ENTERED this 2nd day of December, 2009.

Gregory K. Frizzell
United States District Judge
Northern District of Oklahoma